IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | No. 6:18-cv-00315-REW |
| ) | |
| REAL PROPERTY KNOWN AS 223 ) | |
| SPRING WATER LANE, KNOXVILLE, ) | |
| KNOX COUNTY, TENNESSEE, WITH ) | |
| ALLIMPROVEMENTS AND ) | |
| APPURTENANCES, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| AND ) | |
| ) | |
| ROBERT E. TAYLOR, et. al., ) | |
| ) | |
| Claimants. ) | |

**RULE 72 OBJECTIONS TO MAGISTRATE JUDGE'S
ORDER OF SEPTEMBER 28, 2021 DENYING CLAIMANTS
DR. ROBERT E. TAYLOR'S AND LORI BARNETT'S MOTION
FOR RELEASE OF FUNDS TO PAY COUNSEL FEES, CRIMINAL
<u>DEFENSE EXPENSES AND NECESSARY FAMILY LIVING EXPENSES</u>**

Claimants Dr. Robert E. Taylor and Lori Barnett ("Claimants"), by counsel, respectfully submit their objections to the magistrate judge's Order of Sept. 28, 2021 and ask this Court to review the Order de novo under Rule 72(b) because the order should be considered dispositive rather than non-dispositive under Rule 72(a). It should treat the magistrate judge's Order as a recommended disposition subject to review under Rule 72(b) and not adopt it for the reasons that

1

follow and those set forth at much greater length in claimants' Motion for Release of Funds to Pay Counsel (D.E. 172) and their Reply to the government's opposition (D.E. 182).

This Court should direct the government to release a relatively small part of the funds seized or restrained in this civil forfeiture case so that they may defend themselves in the related criminal case, *United States v. Taylor, et. al.,* No. 6:21-CR-13-REW, which was indicted on March 4, 2021, and provide for necessary living expenses for their large family. The Court has previously stated that it would be receptive to such a request. (D.E. 133 at 7) ("Claimants should file a separate motion on this question for the Court to consider. The Court feels, in general, receptive to this avenue if relief.").

### I. The Magistrate Judge's Order Denying Claimants' Motion Should Be Treated as a Dispositive Order Subject to De Novo Review under Fed. R. Civ. P. 72(b).

Like other circuits, the Sixth Circuit, "[i]n determining whether a particular motion is dispositive, undertakes functional analysis of the motion's potential effect on litigation. The list of dispositive motions contained in § 636(b)(1)(A) is nonexhaustive, and unlisted motions that are functionally equivalent to those listed in § 636(b)(1)(A) are also dispositive." *Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 514-15 (6th Cir. 2001) (holding that a remand motion, which simply sends the case back to state court, is dispositive). "If a motion is dispositive, a magistrate judge may issue only proposed findings and recommended dispositions in response to that motion. *See* 28 U.S.C. § 636(b)(1)(B)." 258 F.3d at 515. In Vogel, because the magistrate judge was not authorized to enter a remand order, it was not a valid order and the opinion accompanying the order had to be treated as "proposed findings and recommendations" subject to de novo review by the district court. *Id.* at 517. *Accord Massey v. City of Ferndale*, 7 F.3d 506, 508 (6th Cir. 1993).

Other circuits have employed the same functional analysis as the Sixth Circuit. For example, the First Circuit held that a motion to appoint a receiver over certain commercial

2

properties that were the subject of a foreclosure action was a dispositive motion because a "motion to appoint a receiver seeks to have a court undertake an action that could have a significant impact on a party's ability to manage and control its property during the course of the litigation." *ML-CFC 2007-6 P.R. Props., LLC v. BPP Retail Props., LLC*, 951 F.3d 41, 48 (1st Cir. 2020). The Court of Appeals relied on the fact that a motion to appoint a receiver was functionally related to a motion for a preliminary injunction—a motion that was encompassed by the list of prohibited motions in § 636(b)(1)(A) that cannot be decided by a magistrate judge—and that statutory list must be construed to "inform[] the classification of other motions as dispositive or nondispositive." 951 F.3d at 49. The First Circuit cited the Sixth Circuit's decision in *Vogel* as support for its analysis. The First Circuit did not have to reach a significant constitutional issue it raised sua sponte: whether the magistrate judge's determination of the receiver issue "would contravene Article III of the federal Constitution, given the limited review that § 636(b)(1)(A) empowered the District Court to exercise over that decision" even if the magistrate judge had statutory authority to "hear and determine" the motion. 951 F.3d at 44.

Likewise, the Ninth Circuit held that an order authorizing involuntary medication for the purpose of making the defendant competent to stand trial was a dispositive motion "with regard to [the defendant's] affirmative claim that he had a constitutional right to be free from unwanted medication." *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1069 (9th Cir. 2004). The court concluded that such an order was not among the pretrial matters that could be fully delegated to a magistrate judge. "Moreover, involuntary medical treatment raised questions of clear constitutional importance. Therefore, the principle of constitutional avoidance required that the statute be interpreted to prevent the delegation to the magistrate judge of final determinations regarding involuntary medication." *Id.* at 1070. The Ninth Circuit remanded for the district court

3

to apply de novo review to the magistrate judge's unauthorized order, treating it as proposed findings and recommendations. While Rivera's constitutional claim to be free from unwanted medication was "not directly tied to the merits of Rivera's case, it has crucial implications for his right to a fair trial." *Id.* at 1069 (citing *Riggins v. Nevada*, 504 U.S. 127, 141-45 (1992) (Kennedy, J., concurring in the judgment)). The Ninth Circuit concluded:

> Applying the principle of constitutional avoidance to the case at hand strongly supports our conclusion that, like jury selection, involuntary medication is not the type of pre-trial matter that Congress intended the Act to delegate to magistrate judges. It is well-established that "involuntary medical treatment raises questions of clear constitutional importance." [citations omitted] Allowing a magistrate judge to make the ultimate decision in a matter of such clear constitutional import would raise serious Article III concerns. *See, e.g., United States v. Raddatz*, 477 U.S. 667, 683 (1980) (The delegation of findings and recommendations to the magistrate judge on issues involving constitutional rights does not violate Article III "*so long as the ultimate decision is made by the district court.*").

377 F.3d at 1070 (citing *Sell v. United States*, 539 U.S. 166, 176 (2003) and other Supreme Court decisions) (emphasis in original). The Ninth Circuit observed that if the district court had applied de novo review to the magistrate judge's order, it would have no need to remand the case, citing *United States v. Weissberger*, 951 F.2d 392, 398 (D.C. Cir. 1991).

As observed by the Ninth Circuit in *Rivera-Guerrero*, 377 F.3d at 1068, "the Supreme Court has also indicated that the listed exceptions in § 636(b)(1)(A) is not exclusive." In *Gomez v. United States*, 490 U.S. 858 (1989), the Court considered whether the Federal Magistrates Act, 28 U.S.C. § 631-639 (2000), authorized magistrate judges to conduct jury selection. It held that even though jury selection was not one of the exceptions listed in § 636(b)(1)(A), it was "more akin to those precisely defined, 'dispositive' matters for which subparagraph (b) meticulously sets forth a

4

*de novo* review procedure." 490 U.S. at 873-74. The Court agreed with the Eighth Circuit's holding that "'subparagraph (A) was plainly intended for less important matters than voir dire.'" 490 U.S. at 874 n. 28 (quoting *United States v. Trice*, 864 F.2d 1421, 1428 (8th Cir. 1988)). The Court also relied on the Act's legislative history which contained assurances that "magistrates' adjudicatory jurisdiction had been circumscribed in the interests of policy as well as constitutional constraints." 490 U.S. at 872.

The Supreme Court reiterated its conclusion in *Gomez* in *Peretz v. United States*, 501 U.S. 923, 929-30 (1991) where, referring to *Gomez*, it stated: "The principle of constitutional avoidance led us to demand clear evidence that Congress actually intended to permit magistrates to take on a role that raised a substantial constitutional question." *See also Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.*, 725 F.2d 537, 545 (9th Cir. 1984) (en banc) ("It would seem at a minimum, however, that good cause for resumption of direct Article III control exists in a case…where a substantial constitutional question is presented….").

How do these court decisions bear on the same issue presented in this case?

A.     The magistrate judge did not address the important statutory and constitutional issues clearly presented by Claimants' motion that have divided the circuits. The magistrate judge did not address Claimants' argument that the *Jones-Farmer* test was never adopted by the Sixth Circuit and, in any event, has been undermined by the more recent Supreme Court decisions in *Luis v. United States*, 136 S. Ct. 1083, 1088-90 (2016) and *Honeycutt v. United States,* 137 S. Ct. 1626 (2017), which hold that there is no statutory basis for seizing or restraining untainted property of the defendant, regardless of whether defendant needs that property in order to bankroll her defense in a criminal case. *See* Doc. 172 at 4; Doc. 182 at 3-4. But even if the magistrate judge had addressed all of these difficult statutory and constitutional issues, he would still have **no**

5

**authority** to make anything other than "proposed findings of fact and recommendations for the disposition, by a judge of the court"), because § 636(b)(1)(A) explicitly states that a "motion for injunctive relief" cannot be "heard and determined" by a magistrate judge. Article III of the Constitution forbids such a delegation of authority to a non-Article III magistrate judge too. "Allowing a magistrate judge to make the ultimate decision in a matter of such clear constitutional import would raise serious Article III concerns. *See, e.g., United States v. Raddatz*, 477 U.S. 667, 683 (1980) (The delegation of findings and recommendations to the magistrate judge on issues involving constitutional rights does not violate Article III "*so long as the ultimate decision is made by the district court.*") (emphasis in original). *Rivera-Guerrero*, 377 F.3d at 1070.

    B.    Just as a motion to appoint a receiver is functionally related to a motion for a preliminary injunction—a motion that is encompassed by the list of prohibited motions in § 636(b)(1)(A) that cannot be decided by a magistrate judge—so too a motion for the partial release of the claimants-defendants' restrained and seized funds to pay counsel fees and expenses is at least functionally related to a "motion for injunctive relief" --the first of the prohibited motions listed in § 636(b)(1)(A) that cannot be decided by a magistrate judge. Indeed, the courts of appeals have repeatedly held that the granting of an asset restraint order or the refusal to dissolve or modify a restraining order—or a seizure or even a lis pendens--is subject to an immediate interlocutory appeal under 28 U.S.C. § 1292(a)(1) **as an "injunction."** *E.g., United States v. 1407 North Collins St.,* 901 F.3d 268, 272-73 (5th Cir. 2018)("the practical effect of seizure warrants is as severe as that of restraining orders, if not more so"; holding that court has jurisdiction under § 1292(a)(1) to hear immediate appeal from an order declining to release property from a lis pendens, as it too makes real property "virtually impossible to sell or mortgage"); *United States v. Chamberlain*, 868 F.3d 290, 293 (4th Cir. 2017) (en banc); *United States v. E-Gold, Ltd.*, 521 F.3d 411, 415 (D.C.

6

Cir. 2008) (seizure warrant and restraining order are both "injunctions" within § 1292(a)(1) regardless of their nomenclature); *United States v. Roth*, 912 F.2d 1131, 1133 (9th Cir. 1990)(pretrial restraining order is a "preliminary injunction" for procedural purposes and therefore appealable under § 1292(a)(1)); *In re Assets of Martin*, 1 F.3d 1351, 1355 (3d Cir. 1993)(post-indictment asset restraint order is appealable as an "injunction" under § 1292(a)(1)); *United States v. Kirschenbaum*, 156 F.3d 784, 788 (7th Cir. 1998)(same); *United States v. Jones*, 160 F.3d 641, 646 (10th Cir. 1998)(same); *United States v. Kramer*, 912 F.2d 1257, 1259 (11th Cir. 1990)(same). *See also United States v. All Assets of Statewide Auto Parts, Inc.*, 971 F.2d 896 (2d Cir. 1992) (district court's refusal to vacate seizure order allowing government to shut down ongoing business is subject to interlocutory review because it has **even more drastic consequences than an injunction**).

Unless these decisions are all wrong, the magistrate judge had **no authority, no "primary jurisdiction"** to make an all-but-final decision on Claimants' motion (as opposed to making "proposed findings of fact and recommendations for the disposition, by a judge of the court"), because § 636(b)(1)(A) explicitly states that a "motion for injunctive relief" cannot be "heard and determined" by a magistrate judge.

C. There is another line of case authority holding that the magistrate judge had no authority to exercise "primary jurisdiction" over claimants' motion, *i.e.*, to make an all-but-final decision under § 636(b)(1)(A) on claimants' motion. The question has arisen whether magistrate judges may exercise "primary jurisdiction" under § 636(b)(1)(A) over a Rule 41(g) motion for the release of property seized for forfeiture. In the only circuit decision counsel has found addressing that issue, Judge Richard Posner noted "the oddity, and probably the irregularity, of the magistrate judge's having denied the motion rather than recommended that the district judge deny it." "We

7

have found numerous cases in which a magistrate judge who is asked to consider a Rule 41(g) motion issues a report and recommendation to the district judge, pursuant to § 636(b)(1)(B), but none in which an appellate court reviewed a magistrate judge's decision granting or denying a Rule 41(g) motion." *Stuart v. Rech*, 603 F.3d 409, 411 (7th Cir. 2010). *Accord In re Scranton Hous. Auth.*, 487 F. Supp. 2d 530 (M.D. Pa. 2007); *United States v. Collins*, 2012 U.S. Dist. LEXIS 35980, at *20-21 (N.D. Cal. Mar. 16, 2012) (magistrate judge's opinion holding that § 636(b)(1) does not identify any authority "for this court" to rule on any motion for return of property as a non-dispositive motion).

> **II.     Claimants' unseized assets and income are inadequate to provide for reasonable legal and living expenses**.

Claimants' unseized assets and current income are not sufficient to provide for reasonable legal and living expenses as both of them face a complex and very long criminal trial together with enormous amounts of discovery. *See United States v. Kahn*, 890 F.3d 937, 942 (10th Cir. 2018) (holding that defendant need only "demonstrate to the district court's satisfaction that he has insufficient unseized assets to afford reasonable representation by counsel of his choice" and living expenses). Claimant have adequately shown what the reasonable legal expenses in a case of this magnitude will be through the declaration of Dr. Taylor and the declarations of their attorneys. (*See* Dr. Taylor, Barbier and Davies Decl. attached to D.E. 172). The magistrate judge had "no quarrel with defense counsels' rates and their anticipated fees and expenses. For purposes of this motion, the Court assumes the staffing of the defense is reasonable." D.E. 183 at 7. Further, Claimant' financial declaration setting out their income and expenses (Taylor and Barnett Financial Statements and Decl. attached to D.E. 172) establish that, while Claimants can currently pay their living expenses, they "lack[] sufficient savings or income with which to pay the agreed upon attorney's fee." *United States v. Dortch*, 2017 WL 9604649, *3 (W.D. Tenn. Dec. 20, 2017)

8

(finding defendant's affidavit and income and expense report show that defendant lacks sufficient savings and income to pay the agreed upon attorney's fee).

The bottom line is that Deborah Barbier has clearly stated under oath that she will have to move to withdraw as Lori Barnett's counsel if this Court does not release some funds to pay for her representation and litigation expenses. D.E. 172-3, ¶12. That is enough to satisfy Lori Barnett's burden.[1] *See United States v. Emor*, 794 F. Supp. 2d 143, 149 (D.D.C. 2011). Yet the magistrate judge disregarded Ms. Barbier's emphatic statement because Dr. Taylor swore that "to the extent Lori Barnett is unable to do so, I would fund her defense, including her counsel of choice, Deborah Barbier." D.E. 172-4, ¶20. "Thus," wrote the magistrate judge, "the expectation is that Taylor will fund the defense for both he and Barnett." D.E. 183 at 7. This conclusion is completely misleading. The magistrate judge ignored the fact that Dr. Taylor swore he did not even have enough assets available to adequately fund *his own expensive* defense, much less Ms. Barnett's expensive defense too. Dr. Taylor was simply saying he would fund Ms. Barnett's defense *if enough of his assets were released* to enable him to do so (because Ms. Barnett did not have enough assets of her own, even if all of her seized assets were released, to fund her defense). Accordingly, Claimants satisfy the first prong under *Jones-Farmer*. Although movants strongly contend that the *Jones-Farmer* test should **not** be applied, they assume for the sake of argument that the magistrate judge was correct to identify that test as controlling.

The magistrate judge agreed with the government that there were gaps in Claimants' financial submissions which precluded them from obtaining an evidentiary hearing on their motion. He summed up these deficiencies as follows: "Claimants do not satisfy prong one because

---

[1] Ms. Barbier is not just saying that. She has made it clear to the undersigned counsel and to her client that she means what she says. If Dr. Taylor or Ms. Barnett had the ability to pay Ms. Barbier's fees, they would gladly have done so already.

9

key descriptions of their assets in the record are unsworn, facially incomplete, and confusing. The Court has no idea as to Claimants' net worth….Claimants do not indicate whether friends or family could help fund the defense." D.E. 183 at 7-8. The bulk of the 25-page Order is devoted to a detailed critique of claimants' financial evidence. D.E. 183 at 6-18. But whatever small gaps there may be in Claimants' financial submissions, they cannot change the overall picture because there is a yawning, unbridgeable gulf between the value of their unseized assets and what they require for "'reasonable legal and living expenses.'" D.E. 183 at 8(quoting *United States v. Jones*, 160 F.3d at 649). The gaps and discrepancies identified by the magistrate judge may affect the *amount* of assets this Court decides to order released, but they cannot completely disentitle Dr. Taylor and Ms. Barnett from any relief. The magistrate judge does not suggest that if Dr. Taylor clarifies various things he left vague or incomplete and explains certain discrepancies between his filings in this case and his disclosures to Probation, he could change his decision. In any event, the magistrate judge determined that claimants had not satisfied the second prong of the *Jones-Farmer* test, something that cannot be overcome by the submission of new evidence.

In contrast to the government's and the magistrate judge's approach, making it difficult and burdensome to satisfy the first prong of the *Jones-Farmer* test, some courts hold that the defendant's burden is "'analogous to a defendant's burden under the Criminal Justice Act (CJA) to show that he is unable to afford representation.'" *United States v. Kolfage*, 2021 U.S. Dist. LEXIS 86113, *13 (S.D.N.Y. May 5, 2021) (quoting *United States v. Daugerdas*, 2012 U.S. Dist. LEXIS 167631 (S.D.N.Y. Nov. 7, 2012). The evidence presented by claimants was more than sufficient under a more reasonable approach. Acceptance of the government's approach would emasculate the Supreme Court's decision in *Luis* by erecting an all but insurmountable barrier for a defendant to get into court to seek relief from an unlawful pretrial restraint of his *untainted* assets.

The *Luis* Court thought that most defendants seeking such relief would be afforded an evidentiary hearing. It observed that "sometimes it will be difficult to say whether a particular bank account contains tainted or untainted funds. But the law has tracing rules that help courts implement the kind of distinction we require in this case….They consequently have experience separating tainted assets from untainted assets, just as they have experience determining how much money is needed to cover the costs of a lawyer." *Luis*, 578 U.S.__, 136 S. Ct. 1083, 1095 (2016). The Supreme Court clearly *intended* that the courthouse door would be open to criminal defendants seeking such relief from seizures and restraining orders concerning untainted property. The High Court expected that some pretrial evidentiary hearings would be necessary in cases like the one at bar to determine what property is tainted and what property is untainted. The High Court did not expect district courts to block the courthouse door based on unrealistic findings that defendants had not shown that they need to use the untainted funds to hire counsel of choice and bankroll an adequate defense in complex cases like this with millions of documents and multiple co-defendants. Claimants urge this Court to re-read *Luis* before deciding this motion and consider the consequences if Ms. Barnett is forced to accept CJA counsel to replace her counsel of choice, Ms. Barbier, who would like to remain in the case if she can be adequately compensated. Consider what the Supreme Court said in *Luis* about the inadequacy of publicly paid counsel in a case such as this. 136 S. Ct. at 1095.

Claimants take issue ("object to") with several specific aspects of the magistrate judge's examination and analysis of their financial evidence.

First, the fact that claimants' have "significant living expenses" cannot be considered as a factor supporting a finding that they failed to satisfy the first prong of *Jones-Farmer*. Claimants are raising their six children. Their "significant" living expenses are perfectly reasonable for an upper middle class family. But the magistrate judge determined that their living expenses "skirt

11

the borders of being 'ordinary' and/or 'reasonable.'" D.E. 183 at 10. The facts relied upon by the magistrate judge in his Order to support this conclusion don't support it. D.E. 183 at 10. The magistrate judge did allow that "significant living expenses are not an *absolute* bar to relief as the claimant in *Wood* had 'significant living expenses,' but made a successful showing that the expenses were reasonable and he could not pay them without release of funds." D.E. 183 at 9 (quoting United States v. Wood, No. 3:15-Cr-GFVT-REW, 2016 WL 8131240, at *5-7 (E.D. Ky. Oct. 3, 2016)).

Second, the magistrate judge faults claimants because "they make no representation as to whether they own *other* valuable items that could be sold to fund the defense." D.E. 183 at 14 (emphasis added). But no one asked them to make such an affirmation so how were they to know that they would need to do so to satisfy the court? Had a hearing been held, this question could have actually been addressed.

Third, the magistrate judge said that he "has no idea of Claimants' total net worth" and cited two cases for the proposition that a defendant's failure to disclose his net worth is sufficient reason to deny his or her motion for relief. D.E. 183 at 15. But even the quotes the magistrate judge cites show that they are easily distinguished from the case at bar. *Id.* The disclosures Claimants made afford the court a reasonably accurate picture of their finances including their net worth. And it is quite clear that their approximate net worth and their current incomes are far too low to pay for an adequate defense of their liberty and property in the criminal case and their significant (but reasonable) living expenses.

Fourth, the magistrate judge faults Claimants for having "made no attempt to provide the Court with any financial records or even sworn summary of such records." D.E. 183 at 16. But neither the court nor their own lawyers advised them that their underlying financial records—a

12

highly labor intensive task—were required at this stage just to get an evidentiary hearing when all that is required is a threshold showing. The magistrate judge's demands (echoing the government) remind one of fruitlessly applying to the DMV for a driver's license without being told by DMV what documents it requires the applicant to bring to the DMV office. At least the DMV lets you come back and apply again after they tell you what documents you are missing. But the magistrate judge rejected Claimants' offer to "provide any additional financial and fee information the Court would like to review at the hearing." D.E. 182 at 10. He ruled that "without some reliable accounting of Claimants' net worth and their full array of assets, Claimants do not make the threshold showing to warrant a hearing." D.E. 183 at 16. So their due process and Sixth Amendment rights to use their own untainted property to defend themselves with counsel of choice go out the window.

Fifth, the magistrate judge draws a strongly negative inference from Dr. Taylor's plain statement that "[a]s of December 2018, the government has seized and/or restrained the vast majority of my assets." D.E. 172-4 at ¶12. See D.E.183 at 16. The magistrate judge concludes that Dr. Taylor's phrasing "leaves open the possibility of large unrestrained *and unidentified* assets." D.E. 183 at 16 (italics and bolding in Order). Claimants see no reason to draw any such inference from Dr. Taylor's statement.

Sixth, the magistrate judge places considerable weight on the fact that claimants "made no representations as to whether family members or friends could help fund the defense. Several cases have turned on this issue, including *Jamieson,* which is cited frequently in the parties' briefs." D.E. 183 at 17. This brings us back to the DMV analogy again. *No one*, including Claimants' counsel, who have extensive experience in this area, asked Claimants to survey their "family members or friends" about whether they could help fund the defense for good reason. Had Claimants done so,

13

the answer would be obvious: none of their "family members or friends" would have a couple of million dollars to give or lend them. Claimants do not need only $20,000 or even $200,000. That distinguishes this case from *United States v. Kirschenbaum*, 156 F.3d 784, 792 (7th Cir. 1998), where, as the magistrate judge notes, "[t]he district court repeatedly inquired into whether friends of family might be able to fund the defense team and the defendant ultimately failed to provide any evidence on this question." D.E. 183 at 17. It also distinguishes the district court decision in *United States v. Jamieson*, 189 F. Supp. 2d 754, 757 (N.D. Ohio 2002). The *Jamieson* court merely asserted a "right to inquire" and informed defendant that it would "require further showing with regard to this issue at the hearing." This Court never told Claimants that they needed to address such questions and neither did Claimants' lawyers. Counsel did not burden their clients with making such a survey for at least two reasons: (1) because it was obvious to counsel that Claimants' "family members and friends" could not or would not give or lend them a significant amount of money *compared with what they needed*; and (2) because counsel firmly believe that there is no legal basis for requiring Claimants to make a showing that they have surveyed all their many friends and relatives about this.

Where does such an inquiry end? It would be open-ended and easily manipulated by the government and result-oriented jurists. Must you ask your sister-in-law? Must you ask your cousins for money? Your cousins' spouses? Who counts as a "friend" you must ask for money? Must you get a sworn statement from each friend and relative? Why stop there? Why not also require defendants to prove that they tried a Go Fund Me campaign? Although the government was able to find a few unpersuasive cases in which such an irrelevant inquiry was made by the court, the vast majority of the case law does not mention any such "evidence" or any need to make such an inquiry.

### III. Claimants have shown a *bona fide* reason to believe that at least some of the seized assets are not subject to forfeiture.

Initially, it is important to note that the burden of proof does not rest on the Claimants to prove the legitimate source for the seized items. *Jones*, 160 F.3d at 647. Claimants only bear a burden of production. *Id.* If Claimants provide the Court with at least a "prima facie showing of a bona fide reason to believe" that their property was seized in error, they are entitled to "an adversarial hearing at which the Government must establish probable cause to believe that the [seized] assets are traceable to the underlying offense." *Id.* Claimants' "burden, however, need not be onerous. As some courts have found, a defendant's declaration that the assets are untainted is sufficient." *United States v. Dortch,* 2018 U.S. Dist. LEXIS 70365 at *12 (W.D. Tenn. Apr. 26, 2018). *See also United States v. Byrd*, 153 F. Supp. 3d 851, 856 (D. Md. 2015) (the *Farmer* test "is merely a threshold test to reach the pretrial probable cause hearing." Therefore, a "proffer" without supporting facts, by an accused drug trafficker that $763,898 in cash held in escrow by the large law firm he wished to retain was derived from three legitimate cash businesses was enough to make a "prima facie showing that the [cash was] not subject to forfeiture," thus entitling him to an evidentiary hearing under *Farmer*). Claimants credibly contend that at least *some* of the seized property was derived from the legitimate medical practice of EHC and Dr. Taylor's legitimate medical practice in Alabama (Direct Primary Care of Mobile, Inc. also known as Vista Medical) or was legitimate cash seized from a safe at their Knoxville residence and not subject to forfeiture (9/28/21 Order at 24). Due process requires the government to show that *all* the property being held by the government for forfeiture is "tainted," and thus subject to forfeiture.

The issue is not simply whether the restrained funds are traceable to EHC because EHC was a legitimate business. Rather, the issue is whether the seized funds are traceable to a *crime*. Here, the government cannot establish that *all* the seized assets are traceable or otherwise

15

sufficiently related to the offenses charged in the indictment. The government has seized all of the revenue generated by EHC and the sale of EHC under the *theory* that all of the revenue represents the proceeds of crime. But that *theory* is not supported by any evidence the government presented and the magistrate judge pointed to no such evidence. Dr. Taylor sold the practice to Crossroads Holding, LLC, on November 14, 2018, after months of due diligence by the purchasers' counsel. The magistrate judge wrongly treated that fact as not probative that EHC was a legitimate medical business. The value of the practice was further enhanced based on changes in government policies that appropriately have sought to encourage the use of buprenorphine based treatment for opiate use disorder. The proceeds of the sale represent a large portion of the seized assets. In fact, the total of the estimated fees and expenses is likely less than twenty percent of the sales price of the medical practice.

     Claimants rely on the same arguments they made in their prior motion to dismiss (D.E. 89), their Motion for Release of Funds to Pay Counsel (D.E. 172) and their Reply to the government's opposition to that motion (D.E. 182). Most importantly, Claimants contend that the government has not established probable cause for *all* of the Claimants' assets that were seized because there is no factual support for many of the allegations made by S.A. Centers in her affidavit. While the Court disagreed and denied the motion to dismiss, Claimants stress that the standard which the Court applied and is needed to satisfy Supplemental Rule G(2)(f) at the pleading stage is quite different than the standard here. As the Court stated several times in its Order, to satisfy Supplemental Rule G(2)(f), the government needed to only show its ability to establish a substantial connection at trial, and tracing is not an issue at the motion to dismiss stage. (D.E. 132 at 17-18; 19, 20, 21). In the context of the current motion, however, tracing *is* at issue. Claimants have only a *prima facie* burden of showing a *bona fide* reason to believe the seized

assets are not subject to forfeiture. Then, the burden shifts to the government to establish probable cause that the restrained assets are traceable to the underlying offense. The magistrate judge disregarded all of this. He accepted as an established *fact* the government's outlandish *theory*, unsupported by any evidence, that EHC was no different than a "pill mill" or a totally fraudulent "penile implant" mass-marketing scheme. D.E. 183 at 19 ("The government's *theory* is that EHC was made to look legitimate from the outside."). The magistrate judge cited one allegation in the indictment at ¶36 but no evidence. D.E. 183 at 22. "[T]he indictment depicts a business with an overarching criminal purpose, which but for that criminal purpose, would not have existed." D.E. 183 at 23-24. Really? That is not even plausible and no facts *alleged* in the indictment actually support that theory. In any event, an indictment is *not evidence*. And the magistrate judge did not consider it necessary for the government to support its implausible theory with a shred of evidence. That is error. The magistrate judge was not deciding a motion to dismiss the indictment.

The magistrate judge opined that this case is like *Jamieson* "where the record showed the claimant's only income during the indictment period came from his business that sold fraudulent life-insurance policies…This case also resembles *Singleton*, a clinic case in which the second prong was not met. There, the Court found the claimant's only 'engine of wealth' during the indictment period was 'the pill-mill operation.'" D.E. 183 at 21. The magistrate judge faulted Claimants for merely arguing "that some portion of EHC's business had to be legitimate." D.E. 183 at 21. He dismissed Dr. Herrell's detailed declaration describing EHC's lawful operations, standards and practices (D.E. 94, Exh. 1) on the ground that it "does nothing to demarcate tainted from untainted funds. In fact, it constitutes a blanket denial of the criminal allegations in the indictment." D.E. 183 at 21. He did not explain why he considered this highly persuasive

17

declaration—and a pile of similar evidence he did not deign to address--was irrelevant or unpersuasive.

The magistrate judge did not find persuasive *any* of the cases Claimants relied on for the proposition that at least some of EHC's business must have been legitimate. D.E. 183 at 23-24. But his analysis doesn't withstand scrutiny. For example, he purported to distinguish *United States v. Swanson*, 394 F.3d 520, 529 (7th Cir. 2005) on the ground that in *Swanson* "there was evidence that certain of the funds came from legitimate 'aboveboard, arm's length sales negotiations between sophisticated companies.'" But that in no way distinguishes *Swanson* from this case. If given an evidentiary hearing, Claimants could present evidence of *thousands* of addiction recovery treatments at EHC that were perfectly proper. The appellate decision in *Swanson* was able to summarize all the evidence in the case, looking backward. The present case hasn't been tried yet and Claimants have not yet been given an opportunity to present detailed, patient by patient evidence to the Court. They have a constitutional and statutory right to such an evidentiary hearing now.

## IV.    Conclusion

The Court should sustain these objections to the Sept. 28 Order upon a de novo review under Rule 72(b), and direct the prompt release of such funds as the Court determines are necessary to pay Claimants' counsels' reasonable fees, reasonable anticipated defense costs and their necessary and reasonable living expenses during the pendency of their lengthy, complex and extremely time-consuming criminal proceedings. At the very least, the Court should grant Claimants the opportunity for an evidentiary hearing on their motion.

Dated: October 8, 2021                           Respectfully submitted,


   */s/ David B. Smith*
David B. Smith
David B. Smith, PLLC
108 North Alfred Street, 1st Floor
Alexandria, Virginia 22314
703-548-8911 / Fax 703-548-8935
dbs@davidbsmithpllc.com

Wade V. Davies
Ritchie, Dillard, Davies & Johnson, PC
606 West Main Street, Suite 300
Knoxville, Tennessee 37902
865-637-0661 / fax 865-524-4623
wdavies@rddjlaw.com

Richard E. Plymale
Frost, Brown & Todd, LLC
250 West Main Street, Suite 2800
Lexington, Kentucky 40507
859-244-7530 / fax 859-231-0011
rplymale@fbtlaw.com

*Counsel for Claimant Robert E. Taylor*


Deborah B. Barbier
1811 Pickens Street
Columbia, South Carolina 29201
803-445-1032 / fax 803-445-1036
dbb@deborahbarbier.com

*Counsel for Claimant Lori Barnett*

19

**Certificate of Service**

I hereby certify that on this 8th day of October, 2021, I filed the foregoing opposition with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

 AUSA Haley Trogdlen McCauley (haley.mccauley@usdoj.gov)
 AUSA Rajbir Datta (rajbir.datta@usdoj.gov)
 Office of the United States Attorney
 260 West Vine Street, Suite 300
 Lexington, Kentucky 40507

   /s/ David B. Smith
   David B. Smith
   David B. Smith, PLLC
   108 North Alfred Street, 1st Floor
   Alexandria, Virginia 22314
   703-548-8911 / Fax 703-548-8935
   dbs@davidbsmithpllc.com
   *Counsel for Claimants*
    *Robert E. Taylor and Lori Barnett*
   *Admitted Pro Hac Vice*